UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSMONDO DWAYNE SMITH,

                              Plaintiff,

            -against-                                       23-CV-7613 (LTS)

THE STATE OF NEW YORK;                              ORDER TO AMEND
SUPERINTENDENT MILLER;
INDIVUDUAL ON AUDIO & VIDEO,

                              Defendants.

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Coxsackie Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his rights when he was incarcerated at Green Haven Correctional Facility.[1] By order dated September 14, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] On October 12, 2023, the Court received from Plaintiff an amended complaint that is nearly identical to the original complaint.[3] The Court treats the amended

---

[1] The Clerk of Court originally docketed the complaint in this action as an amended complaint in another of Plaintiff's actions pending in this court, *Smith v. Miller*, No. 23-CV-5811 (LTS). On August 21, 2023, the Court received a letter from Plaintiff stating that he intended this complaint to be opened as a new civil action, rather than docketed as an amended complaint in his pending action. By order dated August 24, 2023, the Court directed the Clerk of Court to remove the amended complaint from docket number 23-CV-5811, and to docket that submission as a complaint in a new civil action. (ECF 1.) The new civil action was opened under this docket number, 23-CV-7613 (LTS).

[2] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

[3] Along with the amended complaint, Plaintiff also filed a letter requesting permission to file the amended complaint. (ECF 11.) Because Plaintiff is permitted as a matter of course to amend his complaint once prior to service, his request is denied as unnecessary. *See* Fed. R. Civ. P. 15(a)(1). As indicated above, the amended complaint has been accepted for filing.

complaint as the operative pleading. For the reasons set forth below, the Court grants Plaintiff

leave to file a second amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought

by prisoners who seek relief against a governmental entity or an officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter

jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

## BACKGROUND

Plaintiff brings his claims using the Administrative Office of the United States Courts'

11-page Complaint for Violation of Civil Rights form, to which he attaches 75 pages of

additional documents. Plaintiff checks a box on the form to indicate that he is bringing claims

under 42 U.S.C. § 1983 against state or local officials, but the nature of Plaintiff's claims and the

facts giving rise to his claims are exceedingly difficult to understand. For example, in response to

the question on the form asking him to describe where and when his claims arose, Plaintiff

writes,

> Dated (10-5-22) back to when I came to this facility, it's different from upstate
> incarcerated individuals don't talk, joke, interact with correction official's, like
> they do down here on video & audio to. [Illegible] I was (a porter for sometime)
> (but quit twice) cause officer's pick and choose who they help . . . [illegible] that
> showed me a (indifference) cause I don't talk, joke, or play with police, and they
> talk behind your back and things like that. I did my job and (lock right) in after
> everytime, and day, Dated 1-2-23, Talk started but on 1-4-23 it all came out on
> video & audio to time [illegible] till 10:45am/both date/tour 7x3 til nex tour 3x11
> . . . .

(ECF 12, at 4.)[4]

In response to the question asking the date and approximate time of the events giving rise

to his claims, Plaintiff states,

> Date 1-3-23 & 1-4-23 the (door's open) to unlawful allegation discrimination
> grievance to Superintendent to claim is [attach] with all information to time tour's
> date's are [illegible] the Defendant's are cause Superintendent & Deputy Sup. as
> well as OSI is NOT inform's one of these individual's to the unlawful allegation's
> dated from (1-4-23 till now) only talk to Sgt. Fox's to this discrimination act
> which is (not) being investigated only give the facts to merit to claim date with
> sgt. Fox's 4-11-23 Dayroom unit. 7x3 tour am.

(*Id.* at 5.)

Where asked to state the facts underlying his claims, Plaintiff writes,

> The facts are on video & audio to these individual's making this claim, Which
> they are (not) informing me to whom, Sgt. Fox's (state FOIL)[.] The video audio,
> which (I can't watch) cause it's on a (Disk) so that show's he is protecting his
> staff, and others [illegible] To video audio claim, And OSI which is suppose to
> (inform me) to who, what, how, to ask why or show proof to what's being said on
> video & audio to what (I did) or who they are stating this allegation claims.

---

[4] Plaintiff writes using irregular capitalization. For readability, the Court uses standard
capitalization when quoting from the amended complaint. All other grammar, spelling, and
punctuation are as in the original unless otherwise indicated.

(*Id.*)

The Court is able to glean the following information from the documents attached to the amended complaint form, which largely consist of various grievances and complaint letters Plaintiff filed with prison officials and other government officials, many of which are written in a style similar to the complaint, and misbehavior reports issued to Plaintiff. On January 3, 2023 and January 4, 2023, Green Haven officials, correction officers made "unlawful allegation[s] about me and my sexual orientation outer my conduct of being other th[a]n a man." (*Id.* at 15-16.) On January 8, 2023 at 7:00 PM, a female officer made a "discriminating remark" in front of Cell 28. (*Id.* at 16). On January 9, 2023, a male officer made a "discriminating claim" about Plaintiff's "sexual orientation reply, about [Plaintiff] stepping in a friend cell to get certified mail slips." (*Id.*) Plaintiff filed a grievance on January 10, 2023 regarding the comments from guards. (*See id.* at 12.) On the complaint form, Plaintiff alleges that he experienced injuries to his "respect as a man" and that that Defendants have "violate[ed] [his] character as a man, father & husband" and that he has experienced "humiliation in population."[5] (*Id.* at 5.)

Plaintiff also suggests that correction officers retaliated against him for filing complaints. (*See id.* at 13.) In a document attached to the original complaint, He alleges that guards have frisked his cell (ECF 2, at 19), told him to take down anything covering his cell gate and "flash[ed] lights in [his] face all night," (*id.*). Plaintiff also alleges two female officers "act with indifference to [him] like [he] did something to them or violated them as a female." (ECF 12, at 26.)

The Court understands Plaintiff to be seeking money damages. (*See id.* at 5.)

---

[5] Notably, however, Plaintiff does not connect these injuries to the comments regarding his sexuality, which are only mentioned in the attachments to the amended complaint.

**DISCUSSION**

A.     **Rule 8**

Although *pro se* litigants enjoy the Court's "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (per curiam), their pleadings must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Id.* (citing *Twombly*, 550 U.S. at 555). But the court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). As set forth in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Id*. (internal citations, quotation marks, and alteration omitted). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

While a complaint's statement of claim must contain sufficient factual detail, it should not be "prolix" (lengthy) or contain unnecessary details. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass

of verbiage'" (citation omitted)); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding

that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of

unrelated and vituperative charges that defied comprehension"); *see also Annuity, Welfare &*

*Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc.*

*15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL

3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints

that are unnecessarily long-winded, unclear, or conclusory.")

Here, Plaintiff's submission does not comply with Rule 8 because it contains extraneous

and confusing information and does not contain a short and plain statement showing that Plaintiff

is entitled to relief. The information Plaintiff presents on the complaint form is largely

incomprehensible and the attachments, although clearer, contain voluminous information and do

not provide a short and plain statement of the claims Plaintiff is attempting to raise. The Court is

unable to decipher with any clarity the specific events and conduct giving rise to Plaintiff's

claims.

In light of Plaintiff's *pro se* status, the Court grants him 60 days to file a second amended

complaint detailing his claims.

**B.   Constitutional Claims**

Because Plaintiff appears to seek money damages from state correctional officers, the

Court construes the amended complaint as attempting to assert constitutional claims under 42

U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right

secured by the Constitution or laws of the United States was violated, and (2) the right was

violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487

U.S. 42, 48-49 (1988). The allegations in the attachments to the amended complaint suggest that

Plaintiff may be attempting to assert claims that correction officials jeopardized his safety by spreading rumors about his sexuality and for retaliation under the First Amendment.

1.    Comments about Plaintiff's sexuality

The Court understands Plaintiff to possibly be asserting claims that correction officers violated his constitutional rights by harassing him, making comments, and, possibly, spreading rumors concerning his sexual orientation. To the extent the Court is able to understand Plaintiff's allegations, they are insufficient to state a claim under Section 1983. Although prison officials are required to take reasonable measures to guarantee the safety of inmates, *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997), allegations of verbal harassment, threats or profanity alone do not constitute a violation of any federally protected right, and therefore are generally not actionable under Section 1983. *Zeno v. Cropper*, 650 F. Supp. 138, 141 (S.D.N.Y. 1986) (finding that the use of "vile and abusive language . . . .no matter how abhorrent or reprehensible, cannot form the basis of a § 1983 claim" (internal quotation marks and citation omitted)); *see Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that verbal harassment in the absence of any appreciable injury does not state a claim under Section 1983); *Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997) ("Allegations of threats, verbal harassment or profanity, without injury or damage, do not state a claim under § 1983.").

However, where prison officials deliberately spread rumors of an inmate's real or perceived homosexuality, which could incite other inmates to physically harm him, such facts may state a constitutional violation. *See Montero v. Crusie*, 153 F. Supp. 2d 368, 377 (S.D.N.Y. June 27, 2001) (citing *Thomas v. Dist. of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995) ("In the prison context in which [plaintiff] was required to live, one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality.")). To state such a

7

claim, a plaintiff must show that prison officials failed to act reasonably to ensure a safe environment when they were aware of the existence of a significant risk of injury, whether or not an actual attack occurred. *See Montero*, 153 F. Supp. 2d at 377; *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997). At a minimum, the complaint must allege facts suggesting that the plaintiff suffered physical injury or that the threat of such injury was imminent; conclusory assertions are insufficient. *See Dawes v. Walker,* 239 F.3d at 494 (plaintiff failed to state an Eighth Amendment claim where he did not allege that he was assaulted, threatened with assault or that there were credible rumors of an intended assault), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Hamilton v. Fischer*, No. 6:12-CV-6449 (MAT), 2013 WL 3784153 at *15 (W.D.N.Y. July 18, 2012) ("At a minimum, the plaintiff-inmate must show that the defendant's actions gave rise to an excessive risk to [his] safety[.]" (internal quotation omitted)); *Nji v. Heath,* No. 13-CV-0200 (CM), 2013 WL 6250298, *10 (S.D.N.Y. Dec. 2, 2013) (plaintiff failed to state an Eighth Amendment claim based upon defendant's rumor where "[p]laintiff [did] not allege that he was ever actually threatened with harm as a result, or that he or other inmates had been harmed as a result of this rumor").

Furthermore, the plaintiff "must allege actions or omissions sufficient to demonstrate deliberate indifference." *Farmer*, 511 U.S. at 834. In other words, he must allege that prison officials knew of and disregarded an excessive risk to his health or safety. *Id.* at 837.

Here, Plaintiff's allegations that correction officers made remarks concerning his sexual orientation that caused him "humiliation in population" may be an attempt to assert a claim that correction officials were deliberately indifferent to his safety. Plaintiff does not, however, allege any facts suggesting that he suffered physical injury or was threatened with imminent physical injury as a result of the correction officers' comments. Nor does Plaintiff allege facts suggesting

that any individual defendant knew of but disregarded such a risk to Plaintiff's safety. Plaintiff therefore fails to state a viable deliberate indifference claim.

The Court grants Plaintiff leave to file a second amended complaint alleging additional facts to state a deliberate indifference claim with respect to the correction officers' remarks about his sexual orientation. In addition to providing additional facts in support of his claim, Plaintiff should name as defendants those individual correction officers he alleges violated his rights.

2.     Retaliation

In the attachments to his complaints, Plaintiff alleges that correction officers searched his cell and acted with "indifference" toward him, possibly in retaliation for filing complaints about prison conditions. To state a First Amendment retaliation claim, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [prisoner], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation and alteration omitted). An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quotation marks omitted). "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis*, 320 F.3d at 354. For example, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009); *see also Mateo v. Fischer*, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010) (endorsing incorporation of circumstantial evidence of causation "where the adverse action occurs soon after the protected activity," and holding that, where a false misbehavior report was filed one day after he filed a grievance, causation requirement was met (citation omitted)).

Nevertheless, "because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quotation marks omitted)). Accordingly, First Amendment retaliation claims must be "supported by specific and detailed factual allegations" and may not be stated "in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (citation omitted).

Here, Plaintiff does not allege sufficient facts to state a First Amendment retaliation claim. The Court understands Plaintiff to be alleging that he was retaliated against for filing prison grievances, which is recognized as a constitutionally protected activity. *Davis*, 320 F.3d at 352-53. Even if the Court assumes that the actions taken by the correction officers would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *id.* at 353, Plaintiff does not allege any facts suggesting a causal connection between the constitutionally protected activity and any alleged retaliatory behavior. Plaintiff therefore fails to state a viable First Amendment retaliation claim.

The Court grants Plaintiff leave to file a second amended complaint alleging additional facts to state a viable First Amendment retaliation claim. Plaintiff should also name as defendants those correction officers whom he alleges unlawfully retaliated against him.

## C.     Claims against the State of New York

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to

state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not

waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate

the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park*

*Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Court dismisses Plaintiff's Section 1983 claims

against the State of New York under the doctrine of Eleventh Amendment immunity, for lack of

subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39

(2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter

jurisdiction."); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although

the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because

it affects our subject matter jurisdiction.").

## D.    Claims against Superintendent Miller

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the

defendants' direct and personal involvement in the alleged constitutional deprivation. *See*

*Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in

this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A

defendant may not be held liable under Section 1983 solely because that defendant employs or

supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable

under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional

violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Plaintiff names Green Haven Superintendent Miller as a defendant, but he does not allege facts showing how Miller was personally involved in the events underlying his claims. If Plaintiff asserts Section 1983 claims against Miller in a second amended complaint, he must allege facts showing how Miller was directly and personally involved in violating his federally protected rights.

**E.      State law claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because Plaintiff has been granted leave to file a second amended complaint, the Court will determine at a later stage whether to exercise its supplemental jurisdiction of any state law claims he may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has

cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under Section 1983, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims that correction officers were deliberately indifference to his safety and retaliated against him in violation of the First Amendment. Plaintiff must name as the defendant(s) in the caption[6] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the second amended complaint.[7] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

---

[6] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the second amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[7] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2023, at Green Haven Correctional Facility, during the 7-3 p.m. shift."

In the "Statement of Claim" section of the second amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the second amended complaint states a claim for relief. That information should include:

   a) the names and titles of all relevant people;

   b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

   c) a description of the injuries Plaintiff suffered; and

   d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wants to include from the original or amended complaint must be repeated in the second amended complaint.

Plaintiff may consult the legal clinic in this District that assists people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group ("NYLAG"); it is not part of, or run by, the court (and, among other things, therefore cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit).

To receive limited-scope assistance from the Clinic, Plaintiff may mail a signed retainer and intake form to the NYLAG Pro Se Clinic at 40 Foley Square, LL22, NY, NY 10007. Once the paperwork is received, the Clinic will coordinate contact with the litigant. Once the paperwork is received, it may take up to two weeks for the Clinic to contact the litigant. Copies of the Clinic's flyer, retainer, and intake form are attached to this order.

## CONCLUSION

The Court dismisses Plaintiff's claims against the State of New York under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction.").

Plaintiff is granted leave to file a second amended complaint that complies with the standards set forth above. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as a "Second Amended Complaint," and label the document with docket number 23-CV-7613 (LTS). A Second Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the amended complaint will be dismissed for the reasons set forth in this order, and decline, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting.

Copies of the NYLAG Clinic's flyer, retainer, and intake form are attached to this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   October 27, 2023
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____

_____

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

**SECOND
AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:   ☐ Yes      ☐ No

(check one)

___ Civ. _____ (     )

**I.**      **Parties in this complaint:**

A.      List your name, identification number, and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff's        Name_____

ID#_____

Current Institution_____

Address_____

_____

B.      List all defendants' names, positions, places of employment, and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1        Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 2      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 3      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

<div style="border:1px solid black; display:inline-block; padding:4px;">**Who did what?**</div>

Defendant  No. 4      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 5      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

## II.      Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.      In what institution did the events giving rise to your claim(s) occur?

_____

_____

B.      Where in the institution did the events giving rise to your claim(s) occur?

_____

C.      What date and approximate time did the events giving rise to your claim(s) occur?

_____

_____

_____

<div style="border:1px solid black; display:inline-block; padding:4px;">**What happened to you?**</div>

D.      Facts:_____

_____

_____

_____

*Rev. 01/2010*                                    2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Was anyone else involved?**

_____
_____
_____
_____
_____

**Who else saw what happened?**

## III.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____
_____
_____
_____

## IV.   Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Administrative remedies are also known as grievance procedures.

A.      Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

         Yes _____   No _____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____
_____
_____

B.      Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _____     No _____     Do Not Know _____

C.      Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _____     No _____     Do Not Know _____

If YES, which claim(s)?
_____

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _____     No _____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes _____     No _____

E.      If you did file a grievance, about the events described in this complaint, where did you file the grievance?
_____

1.      Which claim(s) in this complaint did you grieve?
_____

_____

2.      What was the result, if any?
_____

_____

3.      What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.
_____
_____
_____
_____

F.      If you did not file a grievance:

1.      If there are any reasons why you did not file a grievance, state them here:
_____
_____
_____

*Rev. 01/2010*              4

_____
_____
_____

2.      If you did not file a grievance but informed any officials of your claim, state who you
        informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____
_____

G.      Please set forth any additional information that is relevant to the exhaustion of your administrative
        remedies.

_____
_____
_____
_____
_____
_____
_____
_____
_____

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your
        administrative remedies.

## V.      Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that
you are seeking and the basis for such amount). _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____

**VI.    Previous lawsuits:**

<div style="float:left; border:1px solid black; padding:4px">**On these claims**</div>

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____  No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2. Court (if federal court, name the district; if state court, name the county) _____
_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes _____  No _____

If NO, give the approximate date of disposition_____

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____
_____

<div style="float:left; border:1px solid black; padding:4px">**On other claims**</div>

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____  No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____
_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.      Is the case still pending?  Yes _____   No _____
        If NO, give the approximate date of disposition_____

7.      What was the result of the case? (For example:  Was the case dismissed?  Was there
        judgment in your favor?  Was the case appealed?) _____
        _____
        _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

                        Signature of Plaintiff   _____

                        Inmate Number            _____

                        Institution Address      _____

                                                 _____

                                                 _____

                                                 _____


<u>Note</u>:  All plaintiffs named in the caption of the complaint must date and sign the complaint and provide
        their inmate numbers and addresses.


I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.


                        Signature of Plaintiff:  _____



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Incarcerated Civil Litigants in Federal District Court

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students, and paralegals to assist those who are representing themselves or planning to represent themselves, including incarcerated litigants, in civil lawsuits in the Southern District of New York federal court, excluding habeas cases. The clinic is not part of or run by the court.

Even if a litigant has consulted with Clinic staff, unless they retain other counsel and that counsel enters a notice of appearance, they remain unrepresented; are responsible for doing whatever is necessary in connection with the case; and must still submit all court papers to the Pro Se Intake Unit, located in Room 105 of the Daniel Patrick Moynihan Courthouse, 40 Foley Square, New York, New York, or by following the court's instructions for filing via email as a pro se litigant.

## The Clinic Can:

- Assist with amending complaints and responding to motions to dismiss;
- Represent litigants for settlement purposes and, in limited circumstances, for depositions;
- Assist with written discovery;
- Recruit pro bono counsel for depositions and trial; and
- Assist with oppositions to summary judgment.

***Clinic staff cannot assist with habeas cases or criminal matters.***

NYLAG may also be unable to assist if it determines, in its professional legal judgement, that (i) you have refused to cooperate with the Clinic's counsel or follow the Clinic's advice; (ii) any assistance would be unreasonably difficult for NYLAG to carry out; or (iii) your case is or will become frivolous, unreasonable, groundless, or without merit.

## Contacting the Clinic:

To contact the clinic and request a copy of our retainer, please call (212) 659-6190 and leave a message or write to us at the following address:

> NYLAG Legal Clinic for Pro Se Litigants
> Thurgood Marshall Federal Courthouse
> Room LL22
> 40 Foley Square
> New York, NY 10007

Please mail a signed retainer back to the clinic at the above address. Once the paperwork is received, clinic staff will contact you. It may take up to two weeks.

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.



Revised 10/30/22

# NYLAG
## New York Legal Assistance Group

### LEGAL CLINIC FOR PRO SE LITIGANTS IN THE
### SOUTHERN DISTRICT OF NEW YORK

LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT

You retain the New York Legal Assistance Group (NYLAG) to provide you with limited scope legal assistance through its Legal Clinic for Pro Se Litigants in the Southern District of New York (Clinic) under the terms set forth below.

## I.   LIMITS OF ASSISTANCE

The Clinic agrees to provide only limited scope legal assistance in connection with your matter.

This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. NYLAG is not your attorney of record in this matter. In the event that you are or become a party to a case in the Southern District of New York or any other forum, NYLAG will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. NYLAG has no obligation to enter into any such agreement.

- NYLAG has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers an initial consultation only. NYLAG can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- NYLAG has not agreed to represent or assist you on any other matter in the future.  If NYLAG does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. NYLAG will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that NYLAG has sole discretion to decide whether it will provide any additional future consultations. You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment with the Clinic.

## II.  FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

NYLAG does not charge for this assistance.  You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility.  NYLAG's assistance does not guarantee success or any particular outcome but that NYLAG will provide competent assistance.

### III. TERMINATION OF ASSISTANCE

Your participation is entirely voluntary, and you are free to stop receiving NYLAG's limited scope assistance at any time.  NYLAG may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If NYLAG chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

### IV. CONFIDENTIALITY

NYLAG will take all reasonable steps to maintain any information you provide as confidential.

### V.  REVIEW AND CONSENT

By signing and writing today's date below, you indicate that you: have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

If you have questions or concerns, please indicate on this form and someone will arrange to speak with you.

_____                    _____
Signature                                                                                                Date

**Once you have completed this form, please mail it and the completed demographic form to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**

Revised 10/30/22

**NYLAG**
New York Legal Assistance Group

**Name** _____    **Date of Birth** _____

**Facility**  _____

**Identification #** _____    **Email (if available)**_____

**How did you hear about our clinic? (Circle One)**

Pro Se Intake Office               Order/Letter from the Judge           Conference/Hearing with the Judge

Pro Se Information Package          Website                              Friend/Family

Other _____

**Ethnicity (Circle One)**

Asian/Pacific Islander             Hispanic                             Caucasian

African American                   Middle Eastern                       Decline to Answer

African                            Caribbean

Native American                    South Asian

**Education Level (Circle One)**

8th Grade or Less                  GED                                  2-4 years of College/Vocational School

Some high school                   College graduate                     Decline to Answer

High school graduate               Graduate degree

**Gender:**  _____

**SDNY Case Number:** _____

**Once you have completed this form, please mail it and the completed retainer to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**